UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JONAS TRAMELL GRIFFIN,

        Petitioner,

v.                              Case No:  2:21-cv-774-JES-KCD

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

        Respondent.
_____/

## OPINION AND ORDER

Jonas Tramell Griffin ("Griffin" or "Petitioner"), a prisoner in the custody of the Florida Department of Corrections, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1; Doc. 8-1).  The Secretary of the Florida Department of Corrections ("Respondent") filed a response in opposition to the petition.  (Doc. 11).  Griffin filed a reply (Doc. 16), and the petition is ripe for review.

After carefully reviewing the pleadings and the state-court record, the Court concludes that Griffin is not entitled to federal habeas corpus relief on any ground raised in this petition. Further, because the Court was able to resolve each ground on the basis of the record, an evidentiary hearing is not warranted.  See Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

## I.   Background and Procedural History

On July 30, 2015, a jury found Griffin guilty of robbery with a firearm (count one); aggravated battery with a firearm (count two); fleeing or attempting to elude with wanton disregard (count three); and aggravated assault with a firearm (count four).  (Doc. 11-2 at 1154-56, 1162-65).  The trial court sentenced Griffin as a habitual felony offender to life in prison on count one; thirty years in prison on count two; thirty years in prison on count three; and ten years in prison on count four.  Counts one through three each carried a mandatory ten-year minimum term.  (Id. at 1256-57, 1260-72).  Griffin's sentences and convictions were affirmed per curiam by Florida's Second District Court of Appeal ("Second DCA") without a written opinion.  (Id. at 1325).

Thereafter, Griffin filed a motion for postconviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 Motion").  (Doc. 11-2 at 1395-96).  The postconviction court denied the Rule 3.850 Motion without an evidentiary hearing.  (Id. at 1539-1633).  The Second DCA affirmed per curiam without a written opinion.  (Id. at 1731).

Griffin timely filed this federal habeas petition on October 20, 2021.  (Doc. 1).

## II.  Legal Standards

### A.   The Antiterrorism Effective Death Penalty Act (AEDPA)

Under the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  In this context, clearly established federal law consists of the governing legal principles, and not the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision.  White v. Woodall, 572 U.S. 415, 420 (2014); Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).

A decision is contrary to clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an unreasonable application of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000) (quoting Williams, 529 U.S. at 406).

The standard to obtain relief under 28 U.S.C. §2254(d) is both mandatory and difficult to meet. To demonstrate entitlement to federal habeas relief, the petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 572 U.S. at 420 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)). Moreover, when reviewing a claim under section 2254(d), a federal court must presume that any "determination of a factual issue made by a State court" is correct, and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e).

A state court's summary rejection of a claim, even without

explanation, qualifies as an adjudication on the merits—warranting deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Generally, in the case of a silent affirmance, a federal habeas court will "look through" the unreasoned opinion and presume that the affirmance rests upon the specific reasons given by the last court to provide a reasoned opinion.  See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991); Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).  However, the presumption that the appellate court relied on the same reasoning as the lower court can be rebutted "by evidence of, for instance, an alternative ground that was argued [by the state] or that is clear in the record" showing an alternative likely basis for the silent affirmance.  Sellers, 138 S. Ct. at 1196.

### B.  Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance.  466 U.S. 668, 687-88 (1984).  A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  Id.  This is a "doubly deferential" standard of review that gives both the state

court and the petitioner's attorney the benefit of the doubt. Burt v. Titlow, 571 U.S. 12, 15 (2013).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Id. at 688. In reviewing counsel's performance, a court must presume that "counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689 (citation omitted). A court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a highly deferential level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690). Proving Strickland prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687.

### C. Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b)(1). Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v.

Henry, 513 U.S. 364, 365 (1995).  The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998).  Under the similar doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."  Martinez v. Ryan, 566 U.S. 1, 9 (2012).

A petitioner can avoid the application of the exhaustion or procedural default rules by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation.  Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1179-80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999).  To show prejudice, a petitioner must demonstrate a reasonable probability the outcome of the proceeding would have differed.  Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a

"constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray v. Carrier, 477 U.S. 478, 479-80 (1986).

### III. Discussion

This case involves the June 18, 2014, robbery of a Family Dollar store in Cape Coral Florida.  Around 8:55 p.m. a witness, who had just left the store observed two masked men enter the store with a gun.  (Doc. 11-2 at 678-79).  She called 9-1-1.  (Id. at 680, 683-91).  When the men left the store, she saw them go to the back of the building and drive away in a car.  (Id. at 710-11).  She followed them in her own car until the police began chasing the suspects.  (Id. at 711-13).

While inside the store, the robbers held a gun to the manager's head and demanded that he open a safe.  (Doc. 11-2 at 718, 721-22).  The robbers told him they would kill him if he did not comply.  (Id.)  One of the men struck the manager in the head with a gun.  (Id. at 724).  Both the manager and assistant manager testified that the robber with the gun had tattoo sleeves.  (Id. at 725-26, 773).  The robbery was captured on the store's security camera and played for the jury during the victims' testimony.

Several police officers testified that the suspects led them on a high-speed car chase that ended when the suspects crashed their car into another vehicle.  After a subsequent foot chase,

the men were detained.  The store manager and assistant manager were taken to the scene of the crash where they identified Griffin as one of the robbers, primarily because of his tattoo sleeves. The police recovered a gun, masks, gloves, and a bag of money from the vehicle and vicinity of the chase.  (Doc. 11-2 at 778-961).

Griffin raises three claims of state court error and five grounds alleging ineffective assistance of trial counsel Robert Kimber Martin ("Counsel").  Except for ground one, which is unexhausted, each ground was denied by the trial or postconviction court with a written order and affirmed by the Second DCA without a written opinion.  The appellate court's summary rejection of the claims raised below—even without explanation—qualifies as an adjudication on the merits, which warrants deference.  Therefore, for the claims raised in trial (or postconviction) court, this Court will "look through" the Second DCA's silent affirmance and consider the lower court's rationale for denying the claim.  See Sellers, 138 S. Ct. at 1192.

   **A.   Ground One**

In his first claim, Griffin asserts that the trial court erred by denying Counsel's motion for a judgment of acquittal.  (Doc. 1 at 6).  He argues that the evidence in this case was circumstantial and that his conviction "was not supported by competent substantial

evidence." (Id.) [1]   Respondent argues that Ground One is unexhausted because Griffin did not raise the constitutional nature of this claim at trial or in his brief on appeal. (Doc. 11 at 17).

Although Griffin raised a similar claim on direct appeal, this Court finds that he did not exhaust the constitutional aspect of Ground One.  In his appellate brief, Griffin argued that "'[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence.'" (Doc. 11-2 at 1300 (quoting State v. Law, 559 So. 2d 187, 188 (Fla. 1989))).  Griffin argued that under Law, Counsel's motion for a judgment of acquittal should have been granted because there was no testimony regarding the suspects' description to the police prior to the show-up.   (Id.) Accordingly, Griffin's argument on direct appeal was that the evidence identifying him as the robber was circumstantial and could not sustain his conviction under Florida law.

---

[1] In the motion for a judgment of acquittal, Counsel argued that no witness identified Petitioner as the robber from the events at the store—only at the show-up identifications. (Doc. 11-2 at 994).  The trial court denied the motion for the reasons set forth in her order denying Petitioner's pre-trial motion to suppress, and because sufficient physical evidence connected Petitioner to the robbery. (Id. at 995).

Griffin concedes that the constitutional aspect of Ground One is unexhausted.  (Doc. 16 at 5).  But he blames appellate counsel for failing to properly raise the claim on direct appeal.  (Doc. 16 at 5; Doc. 8-1 at 16).  However, the underlying ineffective-assistance claim was not exhausted in state court, and he cannot raise it here for the first time.  See Edwards v. Carpenter, 529 U.S. 446, 452 (2000) ("A claim of ineffective assistance . . . must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (alteration adopted) (internal quotation marks omitted); Kimbrough v. Sec'y, Fla. Dep't of Corr., 809 F. App'x 684, 693 (11th Cir. 2020) (trial counsel's alleged ineffectiveness could not supply "cause" for procedural default of his federal habeas claim absent a demonstration that the ineffective-assistance claim itself was excused by cause and prejudice).

Moreover, even considering the merits of Ground One, Griffin does not explain how the trial court erred under section 2254(d) when it denied his motion for a judgment of acquittal.  The "reasonable hypothesis of innocence" legal standard relied upon by Griffin in his brief on direct appeal is peculiar to Florida law,[2]

---

[2] In Florida, a "special standard of review of the sufficiency of the evidence applies where a conviction is wholly based on circumstantial evidence," or "predicated chiefly upon

and claims based upon a state court's interpretation of state law
are not cognizable on federal habeas review.  See Holsey v.
Thompson, 462 F. App'x 915, 917 (11th Cir. 2012) (recognizing that
a challenge to the sufficiency of the evidence based on Georgia
law was not cognizable on habeas review).  The federal sufficiency
of the evidence standard does not require that cases turning on
circumstantial evidence exclude every reasonable hypothesis of
innocence.  Rather, under the federal standard, "the relevant
question is whether, after viewing the evidence in the light most
favorable to the prosecution, *any* rational trier of fact could
have found the essential elements of the crime beyond a reasonable
doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis
in original).

Here, the state court denied Counsel's motion for a judgment
of acquittal in part because of "the abundant physical evidence
that links the defendant to the crime in question."  (Doc. 11-2
at 995).  Namely, Griffin was identified as the robber by two

circumstantial evidence."  Thorp v. State, 777 So. 2d 385, 389
(Fla. 2000) (quotation omitted).  "Where the only proof of guilt
is circumstantial, no matter how strongly the evidence may suggest
guilt, a conviction cannot be sustained unless the evidence is
inconsistent with any reasonable hypothesis of innocence."  Id.
(quotation omitted); Lowe v. State, 90 Fla. 255, 105 So. 829, 830
(1925) (requiring that the evidence be "irreconcilable with any
reasonable theory of [the defendant's] innocence and exclude to a
moral certainty every hypothesis but that of his guilt").

witnesses. (Ex. 10 at 314–15, 320, 321, 362). He led the police on a high speed chase—in a car observed by a third witness as leaving the scene of the robbery—until the car struck another vehicle and the occupants fled. (Id. at 370). Masks and money from the robbery were found near the car and Griffin had gloves in his pocket that matched the description of the gloves worn by one of the robbers. Even had Griffin exhausted the federal aspect of this claim, the evidence at trial was sufficient for a rational trier of fact to conclude that Griffin robbed the Family Dollar store on June 18, 2014. Therefore, even if exhausted, Ground One would be denied on the merits. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

B. **Ground Two**

Griffin argues that the trial court's failure to grant his motion to suppress David Hood's and Janice Bowen's out-of-court identifications of him as the robber violated his due process rights. (Doc. at 8). Griffin raised this issue both in a pre-trial motion to suppress and in his brief on direct appeal, in which he cited to Neil v. Biggers, 409 U.S. 188 (1972) as providing the factors to be considered when determining the likelihood of

misidentification.  (Doc. 11-2 at 15, 1302).[3]  The Court concludes
that Ground Two was exhausted in state court.  However, Griffin
is not entitled to federal habeas relief.

Prior to trial, Griffin moved to suppress the "show-up"
identifications of Griffin by three witnesses on the grounds that
"the 'showup' was conducted in a manner that unduly and
unnecessarily drew the witnesses' attention to him and was,
therefore, prejudiciously suggestive of the result desired by law
enforcement." (Doc. 11-2 at 15).  After holding a hearing on the
motion, the trial court granted the motion to suppress in part and
denied it in part.  The court found that witness Kelli Vandever
had an opportunity to observe both robbers as they entered the
store, but both perpetrators wore masks, and Ms. Vandever was
unable to see their mouths and around their eyes.  (Id. at 409).
She identified Griffin at the show up without hesitation, but only
by body type and clothing.  (Id.)  The trial court suppressed Ms.
Vandever's identification, noting:

> The defendant was presented to Ms. Vandever by law
> enforcement, standing next to a patrol vehicle,

---

[3] Under Biggers, the factors to consider when evaluating the
likelihood of misidentification include: (1) the opportunity for
the witness to view the criminal at the time of the crime; (2) the
witness's degree of attention; (3) the accuracy of the witness's
prior description of the criminal; (4) the level of certainty of
the witness at the confrontation; and (5) the time between the
crime and the showup.  409 U.S. at 199.

> wearing handcuffs, and she was asked if she could
> recognize him.   Ms. Vandever decided, based
> primarily on the defendant's shoes and white tee
> shirt, that he looked like one of the men she
> observed committing the robbery.  At the scene of
> the robbery, she was unable to observe the
> perpetrators' faces, and the clothing that Ms.
> Vandever observed the perpetrators wearing is
> commonplace.     Under    the   totality   of   the
> circumstances, the court finds that there is a
> substantial     likelihood    of    irreparable
> misidentification by Ms. Vandever of the defendant
> in this case.   Therefore, the court GRANTS the
> motion to suppress Ms. Vandever's out-of-court
> identification of the defendant as one of the
> perpetrators.

(Id. at 408-09).  The court also granted the defendant's request

to preclude the state from eliciting testimony from Ms. Vandever

that the clothing worn by the perpetrators she saw enter the Family

Dollar store was similar to that worn by Griffin at the showup.

(Id. at 409).  However, the trial court did not suppress the out-

of-court identifications made by store manager David Hood and

assistant manager Janis Bowen.    Addressing each factor under

Biggers, the trial court explained:

> As to Janis Bowen and David Hood, and the Neil v.
> Biggers factors, the court finds as follows: (1)
> Both Ms. Bowen and Mr. Hood had an excellent
> opportunity to view the perpetrators during the
> robbery.  The witnesses were within a few feet, if
> not inches, away from the perpetrators inside a
> well-lit store.  Although the perpetrators were
> wearing masks, the witnesses were able to see the
> perpetrators' eyes and skin color, as well as their
> clothing and build. Significantly, with regard to
> the   perpetrator   who   these   witnesses   later
> identified as the defendant, the witnesses were

able to observe what they described as tattoos on his arms.[FN 4]

> [FN4] The perpetrator wearing a short sleeved white tee shirt depicted in State's Exhibit 5 (the store video) and Exhibits 501, 51, 52, and 57 (photographs taken from the store's video surveillance camera), has tattoo-like designs visible on both arms. Photographs of the defendant, admitted as state's exhibits 1516, show the defendant in the hospital after his arrest for robbery on June 18, 2014, with mesh arm sleeves that look like tattoos, similar to those of the perpetrator in the short sleeved white tee shirt depicted in [the state's exhibits].

(2) Both witnesses paid close attention to the perpetrators, especially the perpetrator in the short sleeved white tee shirt. That perpetrator demanded that the safe be opened and struck Mr. Hood several times in the back of the head with a pistol. Ms. Bowen testified that because that perpetrator (the one later identified as the defendant) had his face covered, she was looking at his arms, and that's how she identified him at the store, and, later, at the showup. Mr. Hood testified that he interacted the most with the perpetrator who pistol whipped him and he could see that perpetrator's "tribal tattoos" and his eyes, which he remembers as wide and "bulgier" than average. (3) If either Ms. Bowen or Mr. Hood provided a description of the perpetrators to law enforcement prior to the show-up, this evidence was not presented by the State at the hearing on the motion. However, in this case the State introduced into evidence a color video recording of the incident which shows both perpetrators at the time of the alleged crimes. (4) Both Mr. Hood and Ms. Bowen were certain that the defendant was the perpetrator in the short-sleeved white tee shirt. At first, Ms. Bowen was uncertain, but she asked to see the defendant's arms. Upon seeing his arms, she said, "that's him." While Mr. Hood was unable to identify the other perpetrator at a similar show-

up, Mr. Hood said he was "100% sure" the defendant
was the man who pistol-whipped him.  (5) Only a
brief amount of time elapsed between the robbery
and the show-up. The robbery occurred around 8:55
p.m., and the vehicle crash involving the defendant
occurred around 9:00 p.m. Shortly thereafter, Ms.
Bowen and Mr. Hood were separately brought to the
scene of the vehicle accident to identify the
defendant.

Under the totality of the circumstances, the court
does not find that there is a substantial
likelihood of irreparable misidentification of the
defendant by either Ms. Bowen or Mr. Hood in this
case.  Therefore, the court DENIES the motion to
suppress their out-of-court identifications.

(Doc. 11-2 at 409-10)

On direct appeal, Griffin argued that the identifications by
Bowen and Hood were unreliable because "[Griffin's] face was
covered up and [was] only identified by Bowen at the show-up at
the crash scene by tattoos on his arms while [Griffin] was
handcuffed in his car, and by Hood besides the arm tattoos also by
the shape of his eyes and build." (Id. at 1303).  The Second DCA
affirmed without a written opinion.  (Id. at 1324).  The Court
presumes that the Second DCA adopted the same factual conclusions
and legal reasoning as the trial court's order.  Sellers, 138 S.
Ct. at 1192.

The trial court's conclusions are supported by the record.
Mr. Hood, the manager of the Family Dollar who opened a safe for
the robbers and who was struck in the head by one of them, testified

at the hearing on Griffin's motion to suppress that the police brought him to the showup only minutes after the robbery. He testified that he did not recognize the other suspect, but that he recognized Griffin "100%." (Doc. 11-2 at 70-71). Mr. Hood recognized Griffin's "tribal tattoos," eyes, and physical build. (Id. at 71, 73, 76). Ms. Bowen testified that she observed one of the robbers strike Mr. Hood with the gun in an attempt to have him open the safe faster. (Id. at 84-85). She recognized that robber at the showup by his tattoos. (Id. at 89, 91-92). She told the trial court that "[b]ecause [the robbers] had their face covered . . . I was looking at his arms, and that's how I identified him." (Id. at 92).

The rejection of this claim was neither contrary to Biggers or any other clearly established law and was not based upon an unreasonable determination of the facts. And while Griffin disagrees with the state courts' conclusions, he does not show that the rulings were "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. Griffin is not entitled to federal habeas relief on Ground Two.

C.   **Ground Three**

In Ground Three, Griffin contends, without explanation, that trial counsel was ineffective for "raising an incomplete motion to suppress identification where there were more than one ground for suppressing the evidence." (Doc. 1 at 9).  In his supporting memorandum, Griffin asserts that trial counsel failed to include two meritorious claims as additional bases for the motion to suppress. (Doc. 8-1 at 30).  However, once again, he does not identify either basis that Counsel could have raised.  In his reply brief, Griffin explains that the claims he raises in Ground Three are the same as those raised in Grounds Four and Five of this petition. (Doc. 16 at 12).  Accordingly, the Court need not further address Ground Three.

D.   **Ground Four**

Griffin claims that trial counsel was ineffective for failing to argue, as part of his motion to suppress, that a constitutional violation occurred when the Cape Coral Police Department moved him from the location of his arrest to the location of the crash for the showup identifications. (Doc. 1 at 11; Doc. 8-1 at 31).  He asserts that he raised this claim in his Rule 3.850 Motion, but "the state court failed to address the merits of the claim, failing to demonstrate this claim lacked merit." (Doc. 8-1 at 32).  He also asserts that the state court failed to correctly apply state

law when evaluating the claim and that the record rebuts the postconviction court's finding that the issue "was considered by counsel and rejected because he did not believe a good faith basis for it existed."  (Id.)[4]

In his Rule 3.850 Motion, Griffin argued that Counsel should have asserted that the police "violated the Stop and Frisk Law in moving the defendant from the place of arrest without any type of legitimate reason that would justify the move."  (Doc. 11-2 at 1342).  He claimed that he "was removed from the scene [of his arrest] and transported to where the accident he was involved in took place."  (Id. at 1343).  He said that he "was seized on mere suspicion that he was the assailant in a robbery, there was no probable cause to seize him, place handcuffs on him" and move him for "the sole purpose of [being] identified by the eyewitness[es] and the two victims."  (Id. at 1344-45).

---

[4] In several of his claims, Petitioner complains that the state courts erred under Florida law.  However, a state court, not a federal court on habeas review, is the final arbiter of state law. See Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997) ("state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." ); Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law ... binds a federal court sitting in habeas corpus.").  Therefore, unless necessary to explain its resolution of an ineffective-assistance claim, this Court will not discuss or reevaluate the state courts' interpretation or application of state law in Ground Four, or any other ground raised in this petition.

The postconviction court, noting that this claim had already been considered in a post-conviction hearing on Griffin's motion to discharge counsel, denied it as follows:

> The record reflects that this issue was considered and denied by the trial court at a September 24, 2015 <u>Nelson</u> hearing, held after Defendant had been convicted at trial on the first four counts of the instant case, but before he had been sentenced.  At that hearing, the trial court announced that it "intended[ed] to address all of Mr. Griffin's complaints with regard to Mr. Martin in all four cases."  The first issue to be addressed was that "counsel filed a motion to suppress . . . and Defendant believes that there was something critical left out of the motion that was filed." Mr. Martin, defense counsel, stated at that hearing that the motion to suppress "as it was filed did not leave anything out that was useful or important."  He explained that:
>
> > Mr. Griffin and I before its filing had had discussions about suppressing various things, but those discussions included things that did not to me appear to offer a good faith basis for suppression including particularly his belief that there were no reasonable grounds to stop -- to follow nor to stop the vehicle he was in, nor to seize the vehicle, nor to search it ...
>
> Counsel agreed that he and Defendant had not seen eye-to-eye on the issue, and that he had "not file[d] a motion to suppress on those grounds," but explained that the motion he had filed "was the only one that I thought there were grounds for and that concerned . . . the manner and means of his identification at the so-called show up." The Court found "Mr. Martin credible, and . . . [that Defendant was] disappointed or unhappy with the results of his first trial."   The Court stated that "there is absolutely no evidence, none whatsoever, of ineffective assistance of counsel by Mr. Martin

before trial or during trial in 16812 [the instant
case]. And to be very clear, there is no evidence
of ineffective assistance of counsel in the pretrial
posture with regard to the remaining charge in 16812
or any of the charges in the other 3 cases."
Specifically, the Court found that:

> Mr. Martin's assessment that there was no
> ground to support the search or to challenge
> the search warrant in regard to the vehicle
> was an appropriate and accurate, I think, and
> reasonable assessment. That motion would not
> have been successful. Mr. Martin did, in fact
> move to suppress all identification, and the
> Court addressed that motion and entered a
> ruling granting in part the motion to suppress
> identification and denying on other grounds
> not based on lack of advocacy by Mr. Martin
> but rather what I thought the facts and the
> law showed, but Mr. Martin -- left no stone
> unturned with regards to the motion to
> suppress identification.

> As the issue Defendant currently asserts as a
> possible basis for a motion to suppress was
> considered by counsel and rejected because counsel
> did not believe a good faith basis for it existed,
> Defendant has failed to demonstrate any entitlement
> to relief. **Ground 1(a)**, therefore, is DENIED.

(Doc. 11-2 at 1542-43 (citations to the record omitted and slight

alterations for clarity)). The Second DCA affirmed without a

written opinion. (Id. at 1731).

Contrary to Griffin's assertion otherwise, it is clear that

the postconviction court, by considering the record and the

evidence adduced at the Nelson hearing, did address the merits of

this claim. A review of the record supports the state courts'

adjudication of Ground Four.

After being found guilty at trial, but before sentencing, Griffin wrote a letter to the trial court complaining that Counsel had not performed adequately at trial.  (Doc. 11-2 at 1167-73). The trial court ordered a hearing to inquire as to Griffin's reasons for requesting Counsel's discharge.  (Id. at 1175).[5] Griffin provided the trial court with a list of complaints regarding Counsel's representation including the following:

> Counsel filed a motion to suppress identification that was different from the draft that was given to the Defendant, and the Defendant believes there was something critical "left out" of the motion filed.
>
> Defendant believes that counsel should have moved to suppress *all* identification of the Defendant.

(Id. at 1225).  At the Nelson hearing, Counsel testified that his pre-trial motion to suppress did not leave out anything important and that he did not have a good faith basis to include additional reasons for suppression of the witnesses' identifications.  (Id. at 1200).  This is not a situation where Counsel failed to file a motion to suppress based upon a mistaken understanding of the law.

---

[5] Under Nelson v. State, 274 So. 2d 256 (Fla 4th DCA 1973), a trial court must conduct a hearing when a defendant makes a request to discharge appointed counsel, the request is based on a claim of incompetence, and the alleged ineffectiveness arises from counsel's current representation.  See also Laramee v. State, 90 So.3d 341, 344 (Fla. 5th DCA 2012).

Rather, after discussing the issue with Griffin for two hours, Counsel decided against expanding the motion to suppress to explicitly include an argument that Griffin should not have been returned to the scene of the crash for the showup identifications. This is the epitome of a strategic decision, and Counsel is not incompetent for performing in a particular way "as long as the approach taken 'might be considered sound trial strategy.'" Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (quoting Darden v. Wainwright, 477 U.S. 168, 186–87 (1986)).

Nor has Griffin demonstrated Strickland prejudice. At the Nelson hearing, the court specifically determined that Counsel had "in fact, move[d] to suppress all identification" and that suppression of the identifications would not have been granted on grounds other than those raised. (Doc. 11-2 at 1211). As such, the state court has already said what would have happened had Counsel expanded the motion to suppress—the motion would have been denied. And while Griffin argued in his Rule 3.850 Motion that, even if this argument was rejected by the trial court, it would have been preserved for appellate review, "the Strickland standard focuses on the effect of the deficient performance on the reliability of the outcome in the proceeding in which the deficient performance occurred rather than on whether counsel's deficient performance in the trial court affected the defendant's appellate

rights." State v. Bouchard, 922 So. 2d 424, 429-30 (Fla. 2d DCA 2006); Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (stating that, where petitioner claims counsel should have objected at trial, "we are to gauge prejudice against the outcome of the trial: whether there is a reasonable probability of a different result at trial, not on appeal"). Ground Four does not satisfy either Strickland prong and is denied on the merits.

### E.   Ground Five

Griffin contends that Counsel was constitutionally ineffective for failing to argue in the motion to suppress that "mere suspicion" did not give the Cape Coral Police autorization to pursue, stop, and arrest him. (Doc. 1 at 13).  He asserts that he raised this claim in his Rule 3.850 Motion, where he argued that the witness to the robbery (Ms. Vandever), who followed the robbers in her vehicle and communicated with 9-1-1 as they drove from the scene, did not specifically tell the 9-1-1 dispatcher that she observed the people in the vehicle she was following enter the vehicle.  (Doc. 11-2 at 1346-47).  He also argued that Ms. Vandever did not provide identifying details about the vehicle or the suspects' clothing.  He asserts that nothing connecting the suspects with a specific type of vehicle had been furnished to the police.  (Id.)  The postconviction court denied the claim, because Counsel had explained to the trial court (at the Nelson hearing)

"that he and [Griffin] had discussed various grounds for the motions to suppress before he filed the motion asserting the issue of identification, and that his reasons for not including any other grounds were because he did not believe a good faith basis existed."   (Id. at 1543).   The Second DCA affirmed without a written opinion.   (Id. at 1731).

Griffin argues that the state courts' rejection of this claim was contrary to section 2254(d) for two reasons.   First, he argues that the postconviction court improperly applied Florida law when it evaluated this claim.   (Doc. 8-1 at 36-37).   Next, he argues that there was no reasonable suspicion for an investigatory stop because the police did not observe any suspicions or illegal conduct.   (Id. at 38-39).   Neither reason provides grounds for federal habeas relief.

Under Florida law, a stop is justified when an officer observes facts giving rise to a reasonable and well-founded suspicion that criminal activity has occurred or is about to occur. See Davis v. State, 973 So. 2d 1277, 1279 (Fla. 2d DCA 2008).   In turn, whether an officer's well-founded suspicion is reasonable is determined by the totality of the circumstances that existed at the time of the investigatory stop and is based solely on facts known to the officer before the stop.   See Travers v. State, 739 So. 2d 1262, 1263 (Fla. 2d DCA 1999); McCloud v. State, 491 So. 2d

1164, 1165 (Fla. 2d DCA 1986).  Griffin appears to argue that reasonable suspicion is developed only if the police personally observed the suspicious behavior.  However, Florida courts have held that even anonymous tips can "provide reasonable suspicion under a totality-of-the-circumstances analysis" in certain cases, such as when an officer makes "subsequent observations of a suspect who matches the description given."  Baptiste v. State, 995 So. 2d 285, 296-97 (Fla. 2008).

Here, the record shows that Ms. Vandever observed two masked men enter the Family Dollar Store with a gun and called 9-1-1 as the robbery occurred.  (Doc. 11-2 at 30, 33, 35, 678-80).  She described the robbers and the clothing they were wearing to the dispatcher.  (Id. at 684).  After the robbers left the store, she told the dispatcher that they went around the building to the back.  (Id. at 686).  She then said that the suspects were leaving in a vehicle.  (Id. at 687).  Ms. Vandever followed them and told the operator that the suspects turned left on the first road south of the store.  (Id.)  She said that the suspects were "hauling tails," and then told the dispatcher that the police were chasing them.  (Id.)  At that point, Ms. Vandever returned to the store.

Ms. Vandever reported events to the 9-1-1 dispatcher as they happened and informed law enforcement (through the dispatcher) that they were chasing the vehicle she saw leave the scene of the

robbery.   The suspects then fled from the police.  Competent counsel could have concluded that the police had reasonable suspicion for the stop and decided against challenging it in a motion to suppress.   See Sanchez v. State, 199 So. 3d 472, 476 (Fla 4th DCA 2016) (recognizing that "suspicious conduct, coupled with a vague BOLO, can create a reasonable suspicion"); Virgo v. State, 931 So. 2d 1010 (Fla 4th DCA 2006) (finding the defendant's conduct suspicious where, after noticing officers following him, he drove down a dead-end street, immediately stopped the vehicle, and darted from the car).   Thus, Counsel's performance was not deficient for failing to challenge the stop, and Griffin is not entitled to federal habeas relief on Ground Five.

**F.   Ground Six**

Griffin asserts that Counsel was constitutionally ineffective for failing to take depositions of the victims, eyewitnesses, and law enforcement, "thereby depriving [Griffin] of assisting with trial strategy and articulation of certain lines of questioning that may have assisted in having a coherent theory of defense." (Doc. 1 at 15).   Griffin raised this claim in his Rule 3.850 Motion, and the postconviction court denied it as follows:

> The record reflects that the issue of depositions was also raised at the September 24, 2015 hearing, at which Defense counsel stated that

28

> Again, an assertion was made [by Defendant
> pretrial that] there was no probable cause to
> stop the vehicle because there had been no
> descriptions of it and its flight.  And none
> of these appeared to me to hold much promise
> as deposition material, but nonetheless on
> July 28th, I had a nearly 2-hour visit with
> him in which he read a number of proposed
> questions . . . and I told him what ones of
> those I did . . . and did not think were
> promising [as] deposition material.  So both
> in the consideration of his letter and in the
> two-hour jail visit, I did hear his concerns
> and hear from him what he thought was
> important to follow up by way of a deposition.

Counsel also announced that he had "ordered such
transcripts as I thought ... [had been] necessary,"
and that he had not been aware, even at the time of
the hearing, "of any depositions that I would have
wished I could have had at the trial.  The
witnesses in [Petitioner's case] admitted not
having seen the Defendant's face, and that was
primarily what I needed to hear from them."

The Court asked counsel if there had been any
significant inconsistent statements made during the
trial testimonies of the witnesses that counsel had
not had a deposition transcript for, to which
counsel replied: "No.  No.  It was remarkably
consistent."  The Court thereafter found "that Mr.
Martin adequately prepared for depositions of
witnesses. . . . It's not required, and it was a
reasonable judgment call not to order transcripts
of all the depositions in this case."

As the record reflects that counsel had discussed
the depositions with Defendant, listened to
Defendant's concerns and suggestions, and did not
think that deposing witnesses regarding the stop
held much promise, Defendant has failed to
demonstrate any entitlement to relief.

(Doc. 11-2 at 1544 (citations to the record omitted and minor alterations made for clarity)).  The Second DCA affirmed without a written opinion.  (Id. at 1731).

Griffin now argues that the postconviction court erred under state law by relying on "Counsel's unsworn arguments and statements about factual matters [that] do not constitute evidence."  (Doc. 8-1 at 43 (emphases in original)).  As an initial matter, any argument that the postconviction court violated a state evidentiary rule in a postconviction proceeding is not cognizable on federal habeas review and will not be further addressed.  See Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004) ("[A]n alleged defect in a collateral proceeding does not state a basis for habeas relief.").

Next, as discussed supra, Counsel—after considering the issue and discussing the matter with Griffin—did not believe that an argument alleging that "there was no probable cause to stop the vehicle because there had been no description of it and its flight" held "much promise as deposition material."  (Doc. 11-2 at 1203).  Counsel's decision not to depose additional witnesses was a matter of trial strategy and virtually unassailable on federal habeas review.  See Strickland, 466 U.S. at 690 (recognizing that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually

unchallengeable"); Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.").

Finally, "Strickland places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different" had Counsel performed as Griffin now argues he should have. Wong v. Belmontes, 558 U.S. 15, 27 (2009) (quoting Strickland, 466 U.S. at 694). Griffin merely speculates that deposition testimony from the victims, eyewitness, and law enforcement may have supported a motion to suppress the stop of his automobile. However, he has not offered any new evidence or sworn testimony from any un-deposed witness to support his speculation. That omission, standing alone, defeats this claim. See Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting Aldrich v. Wainwright, 777 F.2d 630, 636 (11th Cir. 1985)); see also United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony or by the witness or on affidavit. A defendant cannot simply state that the testimony

would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."); Ferrell v. State, 29 So.3d 959, 969-70 (Fla. 2010) (when failure to depose witnesses is alleged in the context of an ineffective assistance of counsel claim the defendant must show how this failure harmed him by explaining "a specific evidentiary matter to which the failure to depose witnesses would relate.") (quoting Davis v. State, 928 So.2d 1089, 1117 (Fla. 2005)).  Ground Six fails under both Strickland prongs, and Griffin is not entitled to federal habeas relief in Ground Six.

G.   **Ground Seven**

Griffin asserts that Counsel was constitutionally ineffective for failing to object to law enforcement's in-court identifications of him.  (Doc. 1 at 16).  He argues that the identifications were improper because the "officers did not have any evidence that the man they apprehended in the chase after the car crash was the same person who had actually robbed the Family Dollar Store."  (Doc. 8-1 at 45).

At Griffin's Nelson hearing, the trial court found that Counsel had no basis to object to any of the identifications that were made at trial.  (Doc. 11-2 at 1213).  Based on that finding, the postconviction court found that Griffin had not demonstrated entitlement to relief on this claim.  (Id. at 1545).  Given that

the trial court specifically told Griffin that Counsel had no basis to object to the officers' identifications, any objection would have been overruled, and Griffin cannot show prejudice. See Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1354 (11th Cir. 2019) ("It is not ineffective assistance of counsel to fail to make an objection that is not due to be sustained.").

Furthermore, a careful review of Griffin's trial transcript supports the state courts' rejection of this claim. None of the officers involved in Griffin's apprehension identified him as the person who robbed the Family Dollar store. Rather, they identified him as the person who ran from the police on foot after leading them on a high-speed car chase and crashing into another vehicle. Officer McCreary testified that he became involved in the vehicle pursuit soon after the robbery. (Doc. 11-2 at 858). The suspects' vehicle was driving at a high speed with no headlights. (Id. at 860). It eventually crashed into another car. (Id.) The prosecutor questioned Officer McCreary about what happened next:

> Q. Officer McCreary, upon observing this crash, what were your next actions when you saw the vehicle come to rest?
>
> A. As the vehicle came to rest, two gentlemen exited the vehicle and took off running on foot. I pulled up through the intersection in front of the vehicle, pulled my vehicle into the field. There's

> a field there where there's an abandoned
> fire station.  And at that point in time,
> I exited the vehicle, started giving
> announcement for two occupants, the two
> people that ran from the vehicle to stop,
> deployed my K-9.
>
> Q.  And were you able to ascertain who came
> from the driver's side of the vehicle and
> who came from the passenger side of the
> vehicle based on their points of travel
> from the vehicle?
>
> A.  Well, they passed me, so I was able to see
> the driver when they passed me.  As I was
> facing westbound on Skyline and they went
> eastbound, I was able to see the driver,
> and then when they fled from the vehicle,
> I saw the driver, yes.
>
> Q.  And is that driver here today?
>
> A.  Yes, ma'am.
>
> Q.  Could you please point to him and identify
> him by an article of clothing?
>
> A.  It's the gentleman sitting there with the
> suit on and the – like a brown tie and blue
> shirt.

(Id. at 861-62).  Officer Haberman, who was riding with Officer

McCreary during the car chase, testified that he saw Griffin's car

crash and approached the car.  The state questioned the officer

as follows:

> Q.  So upon your approach of this crashed
> vehicle . . . what are your next actions?
>
> A.  We come up to the intersection, we – the
> vehicle had already crashed and come –
> come to a final rest, and so we drove

> around the crash.  We saw two black males
> exit the vehicle and run southbound into
> a field, away from the vehicle.
>
> Officer McCreary was driving the Tahoe, so
> we jumped the curb and started driving
> into the field.  And one of the black
> males then kind of, as he was running
> southbound, made a U-turn as – you could
> say U-turn, and started running
> northbound.  At that point I exited,
> exited the vehicle from the passenger seat
> and began a foot pursuit after the male
> that made the U-turn and started running
> northbound.
>
> Q.  And that individual that you were
>     pursuing, is he here today?
>
> A.  Yes.
>
> Q.  Could you please point to him and identify
>     him by an article of clothing?
>
> A.  He's sitting right there with the blue
>     shirt.

(Id. at 877).   Officer Kortright identified Griffin only as the person presented to witness Bowen for her identification.  (Id. at 872).  Likewise, Officer Carson also identified Griffin as the person presented to one of the victims for potential identification after the chase.  (Id. at 853).  All of the identification testimony was based on the officers' personal observations, and Counsel had no grounds on which to object.  See Fla. Stat. § 90.604 ("[A] witness may not testify to a matter unless evidence is introduced which is sufficient to support a finding that the

witness has personal knowledge of the matter."). The fact that the officers could not (and did not) identify Griffin as a robber does not render inadmissible their identification of him as the person they stopped after the chase and car crash. Counsel had no grounds on which to object, and Griffin is not entitled to habeas relief on Ground Seven.

**H.   Ground Eight**

Griffin asserts that Counsel's performance was constitutionally deficient because he filed only a "boilerplate" motion for judgment of acquittal. (Doc. 1 at 18). At trial, Counsel moved for a JOA as follows:

> If the court please, we would move for a judgment of acquittal at this time on the grounds that no witness in the store has been able to identify Mr. Griffin from the events of the store, and that such identification, as it was done as a show-up, depends upon the reliability of their observations, limited as they were, within the store, and the -- and the circumstance being believed that Mr. Griffin was the same individual who was within the store, based upon the circumstances of the police chase, of which the court has heard the details. And that's what we rest the motion on.

(Doc. 11-2 at 994-95). The trial court denied the motion, noting that, for the reasons given in the order denying Griffin's motion to suppress and "also the abundant physical evidence that links

36

[Griffin] to the crime in question," there was competent substantial evidence to support a finding of guilt.  (Id. at 995).

Griffin raised this Ground in his Rule 3.850 Motion, and the postconviction court noted that, "[w]hen there is no showing that a motion for judgment of acquittal had a likelihood of success, a movant has not presented a facially sufficient claim of ineffective assistance of counsel." (Doc. 11-2 at 1548 (quoting Neal v. State, 854 So. 2d 666, 670 (Fla. 2d DCA 2003) (internal quotation marks omitted))).  The postconviction court determined that much of this ground was a re-hash of other grounds already raised and rejected, but denied Griffin's argument that he was insufficiently identified as the robber as follows:

> To the extent that Defendant believes that counsel should have argued a more robust motion for judgment of acquittal based on identification, the record reflects that at the Nelson hearing held after trial, but before sentencing, the Court addressed the identification issue, stating "I mean significantly, Mr. Griffin, you were found wearing tattoo sleeves that exactly matched the tattoo sleeves of the person on the video; and the two people that identified you that I allowed to identify you at trial, they identified you primarily based on your arms and the tattoo sleeves." Because the State presented witnesses who identified Defendant based on his tattoo sleeves, which matched the tattoo sleeves of the person caught on the video, it is highly unlikely that had such a JOA been made that it would have been granted.

(Id. (citations to the record omitted)).

Now Griffin appears to assert, among other things, that the witnesses identified the robber by his tattoos, suggesting that he had actual tattoos, whereas Griffin was actually apprehended wearing fabric tattoo sleeves. (Doc. 8-1 at 55). Therefore, he asserts that the state courts' rejection of this claim was based upon an unreasonable determination of the facts. (Doc. 16 at 37–38).

The trial transcript does not support this argument. Mr. Hood testified that he recognized Griffin as the robber because his arms "had designs up and down them. It looked tribal, so I made the assumption it was either color tattoos or a sleeve of some sort." (Doc. 11-2 at 726). Ms. Bowen described the tattoos on Griffin's arms as "it was like a sleeve like." (Id. at 773). To the extent Griffin argues that no testimony was presented to prove that the sleeves in the video were an exact match to the sleeves he was wearing when apprehended, the video showing the robbery and the tattoo sleeves taken from Griffin were admitted into evidence. The jury was allowed to determine whether they were a match. No testimony was required.

And even if Counsel had grounds to file a "better" motion for judgment of acquittal—a finding not made by this Court—Griffin cannot demonstrate prejudice from his failure to do so. Under Florida law, a motion for a judgment of acquittal is designed to

challenge the legal sufficiency of the state's evidence.  State
v. Williams, 742 So. 2d 509, 510 (Fla. 1st DCA 1999).  In moving
for a judgment of acquittal, a defendant admits not only the facts
offered in the evidence, but also every reasonable conclusion
favorable to the state that the fact-finder might fairly infer
from the evidence.  Williams, 742 So.2d at 510 (citing Lynch v.
State, 293 So. 2d 44, 45 (Fla. 1974)).  If the state presents
competent evidence to establish each element of the crime, a motion
for a judgment of acquittal should be denied.  Id. at 510.  In
addition, "[t]he credibility and probative force of conflicting
testimony should not be determined on a motion for judgment of
acquittal."  Lynch, 293 So. 2d at 45.  In other words, a trial
court may not grant the motion for a judgment of acquittal unless
the evidence, when viewed in a light most favorable to the state,
fails to establish a prima facie case of guilt.  Id.

     Given the identification of Griffin as the robber by two
witnesses, Griffin's flight from the police, the video of the crime
as it transpired, and the recovery of guns and a mask found in
Griffin's car, the evidence was sufficient to withstand a motion
for a judgment of acquittal, even had Counsel made a more "robust"
motion.  The Court sees no error in the state courts' rejection
of this claim, much less error that is so clear that there is no
possibility for fairminded disagreement.  Harrington, 562 U.S. at

Case 2:21-cv-00774-JES-KCD   Document 18   Filed 09/25/23   Page 40 of 42 PageID 2027

103; see also discussion supra Ground One.  Griffin is not entitled to federal habeas corpus relief on Ground Eight.

**I.   Ground Nine**

Griffin asserts that the Second DCA failed to issue a written opinion "in this case," which was necessary to disclose conflict in the law.  (Doc. 1 at 20).  He asserts that, because there is no written opinion, this Court does not owe section 2254 deference to the state courts' decisions.  (Doc. 8-1 at 56).

To the extent Ground Nine is directed at the Second DCA's silent affirmance on direct appeal, the Supreme Court has held that section 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied.  Harrington, 562 U.S. at 98("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").  And if Ground Nine is directed at the silent affirmance of the postconviction court's denial of Griffin's Rule 3.850 Motion, the Supreme Court directs a "look through" presumption to identify the grounds for the affirmance.  Sellers, 138 S. Ct. at 1197.  Griffin is not entitled to relief on Ground Nine.

### IV.   Conclusion

Based on the foregoing, Griffin is not entitled to relief on the habeas claims presented here.

Accordingly, it is ordered that:

1.   The amended 28 U.S.C. § 2254 petition filed by Jonas Trammell Griffin is **DENIED**.  Ground One is dismissed as unexhausted and alternatively, denied on the merits. The remaining claims are denied on the merits.

2.   The Clerk is **DIRECTED** to enter judgment in favor of Respondent and against Griffin, deny any pending motions as moot, terminate any deadlines, and close this case.

### Certificate of Appealability[6]

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court or circuit justice or judge must first issue a certificate of appealability (COA).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, a

---

[6] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Slack v. McDaniel, 529 U.S. 473, 484 (2000), or that "the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  When, as here, the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

Upon consideration of the record, the Court declines to issue a COA.  Because Petitioner is not entitled to a COA, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** in Fort Myers, Florida this __25th__ day of September 2023.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA:  FTMP-2
Copies:  All Parties of Record